IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JUSTIN D. MILLHOUSE, II,
*aka* Alexis Millhouse,

      **Plaintiff,**

                                Civil Action 2:21-cv-05210
                                Judge Sarah D. Morrison
      v.                             Magistrate Judge Elizabeth P. Deavers

DR. ERMIAS SELESHI, *et al.*,

      **Defendants.**

**ORDER AND REPORT AND RECOMMENDATION**

    Plaintiff, Justin D. Millhouse, II, *aka* Alexis Millhouse[1], a state prisoner currently incarcerated in the Chillicothe Correctional Institution ("CCI"), proceeding *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983. (ECF No. 4.)  Following an initial screening, Plaintiff is proceeding on claims against Dr. Ermias Seleshi and Annette Chambers Smith, in both their official and individual capacities, alleging violations of her Eighth

---

[1]Millhouse currently is anatomically male and assigned the male sex at birth, but identifies as a woman and goes by the name Alexis. Millhouse has requested to be identified using female pronouns.  Further, Millhouse has advised the Court that the Marion County Probate Court approved a gender marker change from male to female on April 27, 2022.  (ECF No. 30.)   The Court respects Millhouse's wishes and will refer to her using female pronouns throughout this Order. *See Baker v. Jordan,* No. 3:18-CV-471, 2021 WL 3782896, at *1 (W.D. Ky. Aug. 25, 2021) (citing *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *1 n.1 (6th Cir. Jan. 28, 1997) (adopting a biologically male plaintiff's usage of "the feminine pronoun to refer to herself"); *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 528 (N.D. Ohio 2020) (same)).

and Fourteenth Amendment rights. For the following reasons, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims as **MOOT**.

## I.

Plaintiff's verified Complaint alleges the following. Dr. Seleshi, the State Psychiatry Director, denied Plaintiff hormone replacement therapy for non-medical reasons, *i.e.*, her criminal history. (ECF No. 4.) According to Plaintiff, this denial constitutes deliberate indifference to her gender dysphoria, a recognized serious medical need. Plaintiff explains that, although she was referred for continued mental health treatment, both she and her mental health care provider believe that such treatment has done nothing to address her gender dysphoria issues. Plaintiff further asserts that the decision to deny her treatment for criminogenic reasons was made pursuant to ODRC Policy 69-OCH-07, a policy approved by Defendant Chambers Smith. Plaintiff seeks injunctive relief in the form of an order granting her request for hormone therapy and the revision of ODRC Policy 69-OCH-07 to eliminate non-medical considerations and incorporate the World Professional Association of Transgender Health Standards of Care. Plaintiff is suing both Defendants in their official and individual capacities.

## II.

On June 14, 2022, Plaintiff filed a "Request to Take Judicial Notice of Approval of Hormone Replacement Therapy." (ECF No. 36.) That filing, construed as a motion, is **GRANTED** as unopposed.

In that filing, Plaintiff represented that on June 8, 2022, she was informed that Dr. Seleshi's decision to deny her treatment request had been overturned and she now was approved for hormone replacement therapy. (*Id*.) By Order dated July 22, 2022, (ECF No. 46), the Court noted the following. Plaintiff appears to have obtained, at least in part, the relief that she seeks

in this action to the extent that she now has been approved for hormone therapy.[2] For this reason, it is unclear whether Plaintiff "'continue[s] to have an actual injury that is capable of being redressed by a favorable judicial decision.'" *United States v. Behnan*, No. 1:10-CR-20563-01, 2022 WL 2071050, at *3 (E.D. Mich. June 8, 2022) (quoting *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009). Article III of the United States Constitution limits federal courts to the adjudication of actual, ongoing cases and controversies. *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). "To satisfy the case or controversy requirement, an actual controversy must exist at all stages of review, and not simply on the date the action is initiated." *Rettig v. Kent City School Dist.*, 788 F.2d 328, 330 (6th Cir. 1986). A case will become moot when the requested relief is granted or no live controversy remains. *Deakins*, 484 U.S. at 199.

Further, the Court explained that, as a threshold matter, the Court must ensure that a case or controversy still exists between the parties. Otherwise, the Court no longer has jurisdiction over this case. Accordingly, "[a] court may raise the jurisdictional issue of mootness *sua sponte*." *Sykes v. Swanson*, No. 2:20-CV-12421, 2020 WL 6273462, at *1 (E.D. Mich. Oct. 26, 2020) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions...."); *Berger v. Cuyahoga Co. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993) ("Questions of jurisdiction are fundamental matters which [a court] may review sua sponte.")); *see also Thomas v. City of Memphis, Tenn.*, 996 F.3d 318, 329 (6th Cir. 2021) (considering whether a claim was moot on its own initiative).

---

[2]Further, Plaintiff confirms both in her supplemental response (ECF No 47) and in a filing dated September 14, 2022, and captioned as another "Motion to take Judicial Notice," (ECF No. 53), that she is receiving hormone replacement therapy.

3

"In plain terms, mootness means that if an actual, ongoing controversy ceases to exist between the parties at *any* point in the litigation, the case cannot continue." *Amalgamated Transit Union v. Chattanooga Area Reg'l Transp. Auth.*, 431 F. Supp. 3d 961, 973 (E.D. Tenn. 2020) *(citing Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009); *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986)). "Under the doctrine of mootness, courts must ask whether the case in question consists of a 'genuine dispute[ ] between adverse parties, [such that] the relief requested would have a real impact on the legal interests of those parties.'" *Behnan*, 2022 WL 2071050, at *2 (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021)). "If 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome,' then the case is moot and the court has no jurisdiction." *Id.*

Accordingly, the Court directed the parties to file supplemental briefing addressed to the mootness issue. Specifically, the Court invited the parties to discuss as necessary and with specificity whether, under current circumstances, Plaintiff's claim for a policy revision gives rise to any cognizable legal interest and whether there is any reasonable expectation that Plaintiff will be deprived of hormone treatment in the future. The parties filed their supplemental briefs as ordered on August 5, 2022.

For their part, Defendants assert that this matter is moot because Plaintiff currently is receiving hormone replacement therapy and any suggestion that this therapy may be discontinued in the future is mere speculation. Defendants also contend that Plaintiff has no standing to challenge the policy on behalf of other inmates. For her part, Plaintiff contends that this action is not moot because the policy may be applied to deny her anticipated request for sex reassignment surgery. She also contends that there is no guarantee that ODRC will not stop her

4

current hormone therapy if this litigation ends and a sudden stop in the medication could present a severe health risk. She also appears to challenge the ODRC policy as it relates to social transitioning treatment. Read as a whole, Plaintiff's supplemental filing confirms her view that this action is a vehicle to achieve the ODRC's court-ordered implementation of the WPATH standards.

### III.

As a general matter, prospective injunctive relief is available only when there is a "continuing violation of federal law." *Martinko v. Whitmer*, 465 F. Supp. 3d 774, 777 (E.D. Mich. 2020) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). "In determining whether a case has become moot, a court will examine any intervening circumstances that have arisen during the case's pendency, and decide whether they render the court unable to grant the requested relief." *Amalgamated Transit,* 431 F. Supp. 3d at 973 (internal citations and quotations omitted). "In any given case, intervening circumstances may take one of three forms: (1) the plaintiff abandons or settles the case, (2) the defendant voluntarily ceases the alleged illegal conduct, or (3) events beyond either party's control cause relief to become impossible or unnecessary." *Id*. (citing *Envtl. Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 820 (D.C. Cir. 1983)). "The second intervening circumstance—a defendant's voluntary cessation of the alleged illegal conduct—does not, as a general rule, automatically moot a case." *Id*. (citing *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)). "However, a case is considered moot by the defendant's voluntary cessation of the conduct at issue where the defendant can show: (1) 'there is no reasonable expectation that the alleged violation will recur'; and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Thomas,* 996 F.3d at 324 (quoting *Speech First v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019)).

5

The Court assumes, without deciding, that Plaintiff's approval for hormone replacement therapy amounted to a voluntary cessation of the denial of treatment as alleged in the Complaint. Plaintiff claims, in part, that absent injunctive relief, Defendants remain free under the policy to discontinue her hormone replacement therapy presumably based on criminogenic factors such that this case is not moot.  Plaintiff is incorrect.

First, under the express terms of the challenged policy, there is no reasonable expectation that the wrong Plaintiff alleges in her Complaint – the alleged denial of hormone replacement therapy based on her criminal history – will be repeated.  Plaintiff has submitted a copy of ODRC policy 69-OCH-07.  (ECF No. 1-4.)  Plaintiff's claim, filed prior to her approval for and receipt of hormone replacement therapy, challenges the provision in § VI. F.1.c. which allows the State Psychiatry Director to

> [d]eny further evaluation for hormone treatment and recommend an alternative plan of care due to factors such as co-occurring mental health disorders, criminogenic factors or other factors related to public safety, including the safety and security of other incarcerated individuals; …

(*See* ECF No. 4 at 7 citing ECF No. 1-4 at 13.)

Given Plaintiff's undisputed approval for and receipt of her requested therapy, different policy provisions now apply.  *See* ECF No. 1-4; ODRC policy 69-OCH-07 at §§ VI. F.3. – G.3. These provisions do not contemplate the *discontinuation* of hormone replace therapy for criminogenic reasons.  Indeed, read fairly, the policy states that, once undertaken, hormone replacement therapy may be discontinued only for limited reasons.  One reason is medication non-compliance.  *See* ECF No. 1-4; ODRC policy 69-OCH-07 at § VI. G.  However, discontinuation for that reason cannot occur "without a joint Medical and Behavioral Health treatment team meeting and a face-to-face evaluation by the prescribing clinician." *Id.* at § VI.G.3.  The only exception to the required meeting and evaluation arises from a "clear clinical

need to [discontinue the medication] (*e.g.,* side effects)." *Id*. Thus, side effects or a clinical need are noted as the only other reasons for discontinuation. Importantly, the policy specifically recognizes the necessity of considering "both possible risks and likely benefits of hormone treatment prior to any discontinuation of medication." *Id.*

Plaintiff's insistence that Defendants *could* apply the policy in a way to deny her therapy for criminogenic reasons in the future is to no avail. The issue is not whether Defendants could withdraw Plaintiff's hormone replacement therapy in the future but whether there is any reasonable expectation that they will in fact under the terms of the policy, discontinue her hormone replacement therapy based on her criminal history. *Thomas,* 996 F.3d at 329 ("the question the voluntary cessation doctrine poses [is]: Could the allegedly wrongful behavior reasonably be expected to recur?") (citing *Already, LLC v. Nike*, 568 U.S. 85, 92 (2013)).; *see also Mitchell v. Trame*, No. 18-cv-3274, 2020 WL 6729066 (C.D. Ill. Nov. 16, 2020) (finding no reasonable existed that plaintiff's rights would be violated in the same way). Given the plain language of the policy itself, there is no such reasonable expectation. As discussed, the challenged ODRC policy simply does not authorize Defendants to withdraw Plaintiff's hormone treatment for criminogenic or non-medical reasons. Any potential discontinuation depends either on Plaintiff's own actions with respect to medication compliance or otherwise upon the presentation of a medication side effect or clinical need. Accordingly, Plaintiff's assertions are, at most, speculative.

Plaintiff does not address the specific policy provisions that apply following hormone-therapy approval to explain how, given these aspects of Defendants' policy, her approval is only temporary or that Defendants have any plan to remove her from treatment due to her criminal history or for non-medical reasons. In order to obtain the injunctive relief she seeks, Plaintiff

must show a good chance that Defendants will harm her in the future in the same way she has alleged in the Complaint. That is, she must be seeking more than a retrospective opinion that she was harmed. *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.,* 927 F.3d 396, 406 (6th Cir. 2019) (citing *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) ("When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review.")); *see also Conkleton v. Zavaras*, No. 11-1535, 527 Fed. Appx.. 750, 753-54 (10th Cir 2013) (assuming voluntary cessation and holding that appeal was moot because it was speculative that action as alleged in complaint would happen again). In voluntary cessation cases involving government entities, the "primary concern is not the mere possibility that the government *could* revert to a challenged practice but whether there is evidence that the government will 'flip-flop' or has altered its conduct solely in response to litigation." *Thomas*, 996 F.3d at 328. On this issue, Plaintiff suggests that Defendants' ill intent is evident from their failure to properly credit her completion of the Victim Awareness program. This suggestion, however, is not sufficient to assume that Defendants will discontinue her hormone therapy for non-medical reasons in the future, especially when the policy at issue requires medical professionals to evaluate the risks of any discontinuation. Similarly unpersuasive is Plaintiff's suggestion that, because her medication authorization expires on February 25, 2023, the policy could be applied at that time to deny her medication for criminogenic reasons. Again, this would amount to a *discontinuation* of her therapy and not the initial denial as claimed in Plaintiff's Complaint. And again, the terms of the policy do not contemplate the discontinuation of the therapy for such reasons.

Moreover, should Defendants discontinue Plaintiff's hormone therapy, she would have the opportunity to raise a challenge at that time. Accordingly, the requested injunctive relief would not settle a dispute affecting the Defendants' behavior. That is "'interim … events have completely and irrevocably eradicated the effects of the alleged violation.'" *Thomas,* 996 F.3d at 324 (quoting *Speech First*, 939 F.3d at 767). Plaintiff is receiving hormone replacement therapy. Her receipt of that therapy has eradicated the effects of Defendants' denial of her approval based on criminogenic factors pursuant to ODRC policy. Accordingly, Plaintiff's claims should be dismissed for lack of jurisdiction on grounds of mootness.

Similarly, Plaintiff's supplemental argument that Defendants may apply the policy to deny her anticipated request for sex reassignment surgery cannot succeed. First, such a claim is well beyond the allegations of Plaintiff's Complaint. *See, e,g., Dunfee v. Finchum*, 132 F. Supp. 3d 968, 975 (E.D. Tenn. 2015) ("as a matter of fairness and procedure" declining to consider proposed conspiracy claim raised for the first time in reply brief). Further, any threat of such denial again is purely speculative. As discussed, should such denial happen, Plaintiff would have the opportunity to challenge the policy at that time. Accordingly, as with Plaintiff's claim regarding hormone therapy, injunctive relief at this time would not settle a dispute affecting Defendants' behavior.

Beyond this, the Court reiterates that, to the extent Plaintiff may want to continue a challenge to the policy at issue on behalf of, or for the benefit of, other inmates, Plaintiff may only assert claims which are personal to her. *Pleasant-Bey v. Shelby Cnty. Gov't*, No. 217CV02502TLPTMP, 2019 WL 1601495, at *5 (W.D. Tenn. Apr. 15, 2019) (citing *Corn v. Sparkman*, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to

9

vindicate a deprivation of his own constitutional rights.") (citation omitted)). A plaintiff seeking to assert a claim on behalf of other inmates, lacks standing to do so. *Lacy v. Spearman*, No. 3:12-CV-P575-M, 2012 WL 6084645, at *2 (W.D. Ky. Dec. 6, 2012); *see also Warth v. Seldin,* 422 U.S. 490, 499 (1975); *Coal Operators & Assoc., Inc. v. Babbitt,* 291 F.3d 912, 915–16 (6th Cir. 2002). Further, a *pro se* litigant, may act as her own counsel in this matter. *See* 28 U.S.C. § 1654; *Stiltner v. Donini*, No. 1:19-CV-150, 2019 WL 1880037, at *2 (S.D. Ohio Apr. 1, 2019), *report and recommendation adopted*, No. 1:19-CV-150, 2019 WL 1876872 (S.D. Ohio Apr. 26, 2019). However, a *pro se* litigant is not authorized to represent others in federal court. *Id.*

Further, to the extent that Plaintiff's supplemental filing attempts to challenge the ODRC policy as it relates to social transitioning requests, Plaintiff did not raise such a claim in her Complaint and it is not properly before this Court. Accordingly, the Undersigned declines to consider it. *See, e,g., Dunfee,* 132 F. Supp. 3d at 975.

Finally, the Undersigned notes that several other motions are currently pending, including Defendants' motion to dismiss (ECF No. 17). In light of the recommendation that Plaintiff's claims be dismissed as moot, it is **RECOMMENDED** that these pending motions also be **DENIED**.[3]

### IV.

For all of these reasons, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims **WITHOUT PREJUDICE** for lack of jurisdiction on grounds of mootness. Given the Court's lack of jurisdiction, it is **FURTHER RECOMMENDED** that Plaintiff's motion for a

---

[3]Plaintiff's most recent filing, a Motion to Take Judicial Notice (ECF No. 53), complains that her medication is now being administered during pill call rather than being considered a "carry med." She suggests that transgendered inmates are being treated differently than other similarly situated inmates. To the extent that Plaintiff may be attempting to raise a new claim, the Undersigned notes that she has not sought leave to amend.

10

preliminary injunction (ECF No. 31) be **DENIED**.  It is **ALSO RECOMMENDED** that the Motion to Dismiss (ECF No. 17), Motion to Supplement (ECF No. 23), Motion to Strike (ECF No. 25) and Motion to take Judicial Notice (ECF No. 53) be **DENIED as moot**.  Finally, Plaintiff's request to take judicial notice, construed as a motion, (ECF No. 36), is **GRANTED.**

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date:  September 29, 2022  /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE