UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JUSTIN D. MILLHOUSE, II, *aka*
ALEXIS MILLHOUSE,

      Plaintiff,

  v.

DR. ERMIAS SELESHI, *et al.*,

      Defendants.

:

:

:

Case No. 2:21-cv-05210
Judge Sarah D. Morrison
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Justin D. Millhouse, II, *aka* Alexis Millhouse is a state prisoner proceeding *pro se* and *in forma pauperis*. (ECF No. 4.) Ms. Millhouse was assigned male sex at birth, but identifies as a woman. (*Id.*) She brings this § 1983 action alleging that she was denied hormone replacement therapy ("HRT") under an ODRC policy for non-medical reasons, specifically, her criminal history, in violation of the Eighth and Fourteenth Amendments. (*Id.*)

This matter is before the Court on the Magistrate Judge's Order and Report and Recommendation, which recommends the Court dismiss Plaintiff's claims without prejudice for lack of jurisdiction on mootness grounds. (R&R, ECF No. 56.) Ms. Millhouse objected (Obj., ECF No. 58), and Defendants responded (Resp., ECF No. 60).

The Court **ACCEPTS IN PART** and **REJECTS IN PART** the findings of

the Magistrate Judge. The Court finds the Defendants did not meet their burden of demonstrating that their voluntary cessation moots the case. The matter is **RECOMMITTED** to the Magistrate Judge for further proceedings in accordance with this Opinion and Order.

I.    **BACKGROUND**

Ms. Millhouse is currently incarcerated in the Chillicothe Correctional Institution.

On November 8, 2021, she filed her complaint against Dr. Ermias Seleshi, the State Psychiatry Director, and Annette Chambers-Smith, the Director of Ohio Department of Rehabilitation and Correction, in their individual and official capacities. (ECF No. 4, PageID 99.) She alleges that while incarcerated, she was referred to mental health treatment for her gender dysphoria, but the treatment was ineffective. (*Id.* PageID 101.) When she requested HRT, the request was denied by Dr. Seleshi. (*Id.* PageID 100.) Ms. Millhouse alleges the denial was due to her criminal history pursuant to ODRC policy 69-OH-07 (the "Policy"), which was a policy approved by Ms. Chambers-Smith. (*Id.* PageID 100–02.)

Ms. Millhouse asserts that the denial of HRT constitutes deliberate indifference to her gender dysphoria, a serious medical need, and seeks injunctive relief in the form of an order granting her HRT and requiring Defendants to revise the Policy to eliminate non-medical considerations and incorporate the World Professional Association of Transgender Health Standards of Care ("WPATH Standards"). (*Id.* PageID 100–02, 104.)

In June 2022, Ms. Millhouse filed a "Motion Requesting to Take Judicial

Notice of Approval of Hormone Replacement Therapy," in which she explains Dr. Seleshi's original decision denying her HRT has been overturned and she had been approved for HRT. ("HRT Motion," ECF No. 36, PageID 283.) Attached to the Motion is the HRT approval decision, which shows that State Psychiatry Director, Dr. Aradhana Gill, made the decision (not Dr. Seleshi). (*Id.* PageID 286.) Ms. Millhouse suggests the case should proceed because, among other reasons, "she is standing up for all transgender males and females in relation" to the Policy. (*Id.* PageID 283.)

As a result of Ms. Millhouse's HRT Motion, the Magistrate Judge issued an order explaining that Ms. Millhouse "appears to have obtained, at least in part, the relief that she seeks in this action to the extent she now has been approved for hormone therapy." (ECF No. 46, PageID 320.) Her Honor directed the parties to file supplemental briefing addressing whether the case was moot. (*Id.* PageID 320–21.)

## II.     REPORT AND RECOMMENDATION

In her Order and Report and Recommendation, the Magistrate Judge granted Plaintiff's unopposed HRT Motion. (R&R, PageID 360.) Her Honor then recommended the Court dismiss Plaintiff's claims without prejudice for lack of jurisdiction on mootness grounds. (*Id.*)

The Magistrate Judge reasoned that intervening circumstances, including a defendant's voluntary cessation, can render litigation moot. (*Id.* PageID 363.) She explained that "a case is considered moot by the defendant's voluntary cessation of the conduct at issue where the defendant can show: (1) 'there is no reasonable expectation that the alleged violation will recur'; and (2) 'interim relief or events

3

have completely and irrevocably eradicated the effects of the alleged violation.'" (*Id.* PageID 363) (citing *Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021) (quoting *Speech First v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019))).

The Magistrate Judge then "assume[d], without deciding, that Ms. Millhouse's approval for HRT amounted to a voluntary cessation," and rejected Plaintiff's assertion that absent injunctive relief, Defendants remain free to discontinue her HRT. (*Id.* PageID 364.) Her Honor reasoned that, under the Policy, there was not a reasonable expectation that denial of HRT based on criminal history would be repeated. (*Id.*) She explained that Ms. Millhouse's claims were filed prior to her HRT approval and so they challenged § VI.F.1.c. (*Id.*) Section VI.F.1.c. allows the State Psychiatry Director to "[d]eny further evaluation for hormone treatment and recommend an alternative plan of care due to factors such as co-occurring mental health disorders, criminogenic factors or other factors related to public safety." (*Id.*) After Ms. Millhouse's HRT was approved, different Policy provisions apply that do not contemplate the discontinuation of HRT for criminogenic reasons. (*Id.* PageID 364–65 (citing ECF No. 1-4; Policy at §§ VI.F.3–G.3)). Because of the Policy language, the Magistrate Judge concluded, there is no reasonable expectation Defendants could withdraw Plaintiff's HRT. (*Id.* PageID 365.)

The Magistrate Judge also noted that Ms. Millhouse "does not address the specific policy provisions that apply following hormone-therapy approval to explain how, given these aspects of Defendants' policy, her approval is only temporary or

4

that Defendants have any plan to remove her from treatment due to her criminal history or for non-medical reasons." (*Id.*) "Moreover, should Defendants discontinue Plaintiff's hormone therapy, she would have the opportunity to raise a challenge at that time." (*Id.* PageID 367.)

### III.  OBJECTIONS TO THE REPORT AND RECOMMENDATION

Ms. Millhouse objects to the R&R and because "ODRC has approved the hormone replacement therapy simply to avoid this litigation and to avoid changing the policy." (Obj. PageID 373.) Defendants respond that Plaintiff is no longer being injured because she is receiving HRT, and the Court cannot decide cases on speculative and future events such as a potential reversal of the HRT decision in the future. (Resp. PageID 381.) Further, Plaintiff cannot "[stand] up for all the transgender males and females in relation to" the Policy because this is not a class action. (*Id.*)

#### A.  Standard of Review

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

5

### B. Analysis

Article III of the Constitution grants the Judicial Branch authority to adjudicate cases and controversies. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). The actual-case-and-controversy requirement applies not only at the time a complaint is filed but through all stages of the litigation. *Id.* at 90–91. A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 91 (citation omitted).

As the Magistrate Judge explained, one intervening circumstance that can "moot" a case is a defendant's voluntary cessation of the alleged illegal conduct. (R&R, PageID 363) (citing *Amalgamated Transit Union v. Chattanooga Area Reg'l Transp. Auth.*, 431 F. Supp. 3d 961, 973 (E.D. Tenn. 2020); *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)). A defendant cannot, however, always moot a case simply by voluntarily ceasing its unlawful conduct after the plaintiff files suit. *Nike, Inc.*, 568 U.S. at 91. "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* "Given this concern," the Supreme Court has "explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)); *see also Thomas*, 996 F.3d at 324 (citing *Laidlaw*).

This burden is lower when the government has voluntarily ceased conduct;

6

however, "[w]hile all governmental action receives some solicitude, not all action enjoys the same degree of solicitude . . . [the Court] takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Thomas*, 996 F.3d at 324 (citing *Speech First*, 939 F.3d at 767). For example, where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, the change will "presumptively moot the case unless there are clear contraindications that change is not genuine." *Id.* (citing *Speech First*, 939 F.3d at 767). "If the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*

Defendants did not meet their burden here because they have failed to explain why it would be unreasonable to expect that prison administrators would deny Ms. Millhouse's HRT in the future. Instead, they simply argue that the Court "cannot decide cases on speculative and future events" and Ms. Millhouse cannot continue this action to stand up for other transgender inmates. (ECF No. 48.) Both statements are legally correct, but Defendants ignore that they previously denied HRT, there has been no change in the Policy, and they have provided no assurances that Ms. Millhouse's HRT will not be discontinued for non-medical reasons in the future.

An Eighth Circuit case with analogous facts is instructive. *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021). While that case was on appeal, a mental health

7

services administrator at the Arkansas Department of Correction submitted an affidavit informing the court that plaintiff prisoner had been approved for hormone therapy. *Id.* at 702. The affiant averred that the prisoner "has received hormone therapy 'continuously' since then and 'will continue to receive hormone therapy so long as her treating medical professionals determines that hormone therapy is clinically indicated and recommended." *Id.* In that case, the Eighth Circuit found such assurances sufficient to moot the claims, explaining:

> We recognize Prowse's understandable concern that a ruling that her claim is moot might result in prison administrators ceasing to provide her with hormone therapy. But the fact that Prowse is currently receiving hormone therapy renders moot her claim that ADC has a blanket policy of denying hormone therapy to inmates diagnosed with gender dysphoria. And, although it is a closer call, to the extent Prowse argues prison administrators will deny her hormone therapy (without reviving the alleged blanket policy of denial), we find Parker's uncontested affidavit establishes that it is unreasonable to expect prison administrators would deny her "clinically indicated" hormone therapy in the future.

*Id.* No similar assurances from the Defendants exist in this case.

The Magistrate Judge erred when she found that Ms. Millhouse did not explain how her HRT is only temporary under the Policy or provide evidence that Defendants have a plan to remove her from her HRT due to her criminal history or for other non-medical reasons. (R&R, PageID 365.) The burden rests on the Defendants, not on Plaintiff, to demonstrate that the alleged wrongful behavior could not reasonably be expected to recur. *See Nike, Inc.*, 568 U.S. at 91.

The Magistrate Judge also found that the plain language of the Policy demonstrates there is no reasonable expectation Defendants would discontinue Ms. Millhouse's HRT in the future based on her criminal history (R&R PageID 364), but

8

the Court finds that reading of the Policy too generous. Sections VI.F.3–5 of the Policy outline the procedure that takes place if the State Psychiatric Director recommends HRT, and §§ VI.G.1–3 address medical compliance with HRT. (ECF No. 1-4, PageID 40.) Section VI.G.3, which the Magistrate Judge relies on, provides:

> Hormone treatment medication shall NOT be discontinued for medication non-compliance without a joint Medical and Behavioral Health treatment team meeting and a face-to-face evaluation by the prescribing clinician, unless there is a clear clinical need to do so (e.g. side effects). It is important to consider both possible risk and likely benefits of hormone treatment prior to any discontinuance of medication.

(*Id.*) This Policy provision speaks to ODRC procedures when there is a medical non-compliance issue. It does not speak to, for example, whether or how a new State Psychiatry Director or State Medical Director could cease providing an inmate with HRT for other reasons including but not limited to non-medical ones. Absent Defendants' assurances otherwise, it is reasonable to expect this could occur, particularly where it was not Dr. Seleshi, but rather, Dr. Gill, who approved Ms. Millhouse's HRT. If a new State Psychiatry Director could approve HRT after it was previously denied, why couldn't a new State Psychiatry Director also take it away?

The Court thus **DECLINES TO ACCEPT** the portion of the R&R dismissing Plaintiff's claims.

IV. **PENDING MOTIONS**

The Magistrate Judge made the following additional recommendations:

> Given the Court's lack of jurisdiction, it is **FURTHER RECOMMENDED** that Plaintiff's motion for a preliminary injunction (ECF No. 31) be **DENIED**. It is **ALSO RECOMMENDED** that the Motion to Dismiss (ECF No. 17), Motion to Supplement (ECF No. 23), Motion to Strike (ECF No. 25) and Motion to take Judicial

9

> Notice (ECF No. 53) be **DENIED as moot**. Finally, Plaintiff's request to take judicial notice, construed as a motion, (ECF No. 36), is **GRANTED**.

(R&R, PageID 386–69.) The Court will examine each recommendation, as well as additional filings Ms. Millhouse has made since the Magistrate Judge issued the R&R.

In her motion for preliminary injunction (ECF No. 31), which was filed before she began receiving HRT, Ms. Millhouse asks the Court to grant a preliminary injunction requiring ODRC to wait until the case is resolved to move her to a female facility. (*Id.* PageID 268–69.) She explains a transfer will "hinder her from fully litigating this case" and she would "suffer emotional and psychological stress as a result if moved" which would prevent her rehabilitation efforts. (*Id.*) Ms. Millhouse did not make any allegations in her complaint about potential facility transfers and the motion does not have to do with HRT. (*See* ECF No. 4.) While these factual allegations may form the basis of another lawsuit, they are not properly before the Court on a motion. *See, e.g.*, *Guiffre v. Loc. Lodge No. 1124, United Steelworkers of Am.*, 940 F.2d 660 (Table), 1991 WL 135576, at *5 (6th Cir. 1991) (cannot rely on "wholly new allegations of wrongdoing" in a brief); *World Healthcare Sys., Inc. v. SSI Surgical Servs., Inc.*, No. 1:10-CV-00060, 2011 WL 310183, at *3 (E.D. Tenn. Jan. 28, 2011) (it is a "basic principle" that a complaint may not be amended by briefs); *Shine-Johnson v. DeWine*, No. 2:20-CV-5919, 2021 WL 1379133, at *1 (S.D. Ohio Apr. 12, 2021) (advising a plaintiff of the right to file a separate action to pursue any claims for deliberate indifference related to denial of medical treatment

that were in a declaration but not the complaint). Ms. Millhouse's motion for preliminary injunction is **DENIED**. (ECF No. 31.)

Ms. Millhouse's "Motion to Take Judicial Notice" is also **DENIED** (ECF No. 53) because it similarly raises new allegations not in her original complaint about having to take Estradiol in a pill line and her desire for a sex reassignment surgery.

In addition, Ms. Millhouse recently filed a "Request for Emergency Injunction" and "Request to Take Judicial Notice," which fail for the same reasons. (ECF Nos. 61, 62.) In the former, she explains she has "regularly experienced being strip searched by male Correction Officers where there have been no emergency situations at hand," and asks that the Court issue a permanent injunction prohibiting male correctional officers from strip searching her. (ECF No. 61, PageID 385, 389.) In the latter, she explains that ever since being given HRT, she has been having issues with the medical staff properly adjusting her medication. (ECF No. 62, PageID 395.) These are again new allegations not contained in her original complaint and therefore both Requests (construed as motions) are **DENIED**. (ECF Nos. 61, 62.)

Next, Defendants' motion to dismiss argues, *inter alia*, Ms. Millhouse's complaint should be dismissed because Ms. Millhouse has failed to state claims under the Eighth and Fourteenth amendments and Defendants are entitled to Eleventh Amendment immunity and qualified immunity. (ECF No. 17, PageID 156.) Specifically, they argue that because Ms. Millhouse was receiving mental

health treatment,[1] she failed to state an Eighth Amendment deliberate indifference claim. (*Id.* PageID 159.) Defendants' motion to dismiss is **DENIED without prejudice** to refiling given that Ms. Millhouse's receipt of HRT creates an intervening change in the underlying facts. (ECF No. 17.)

In connection with briefing on Defendants' motion to dismiss, Ms. Millhouse filed a motion to supplement her response, in which she discussed the WPATH Standards. (ECF No. 23.) Defendants moved to strike the motion to supplement, arguing Ms. Millhouse did not comply with Local Rule 7.2 because she did not seek leave to file the motion. (ECF No. 25.) Ms. Millhouse's motion to supplement her response and Defendants' motion to strike are **DENIED AS MOOT** because the motion to dismiss has been denied without prejudice. Nevertheless, Ms. Millhouse is **ADVISED** that even as a *pro se* litigant, she must comply with the Local Civil Rules.[2] *See* A Guide For *Pro Se* Civil Litigants, p.1 ("Litigants must be careful to fully comply with the Federal Rules of Civil Procedure, the District Court's Local Rules, the applicable General Orders, and the pretrial and trial procedures of each individual Judge.").

---

[1] At the time Defendants' motion to dismiss was filed, Ms. Millhouse was receiving mental health treatment only (not HRT). (*See* ECF No. 17, PageID 159–64.)

[2] The Local Civil Rules for the Southern District of Ohio are available at: https://www.ohsd.uscourts.gov/local-rules. The *Pro Se* Handbook is available at: https://www.ohsd.uscourts.gov/pro-se-handbook.

Finally, no party objects to the Magistrate Judge's grant of Plaintiff's HRT Motion. The R&R is therefore **ACCEPTED IN PART** in its grant of Plaintiff's HRT Motion. (ECF No. 36.)

## V. CONCLUSION

As stated herein, the Court **ACCEPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Order and Report and Recommendation. (ECF No. 56.) The matter is **RECOMMITTED** to the Magistrate Judge for further proceedings in accordance with this Opinion and Order.

The following motions filed by Ms. Millhouse are **DENIED**: motion for preliminary injunction (ECF No. 31), "Motion to Take Judicial Notice" (ECF No. 53), "Request for Emergency Injunction" (ECF No. 61), and "Request to Take Judicial Notice" (ECF No. 62).

Defendants' motion to dismiss is **DENIED without prejudice** to refiling. (ECF No. 17.) Ms. Millhouse's motion to supplement her response (ECF No. 23) and Defendants' motion to strike (ECF No. 25) are **DENIED AS MOOT**.

Plaintiff's HRT Motion is **GRANTED**. (ECF No. 36.)

    **IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**